## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Frankie Lordmaster, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| vs. | ) | |
| | ) | |
| Carrie Clemens, et al., | ) | Case No. 1:16-cv-266 |
| | ) | |
| Defendants. | ) | |

Plaintiff is an inmate incarcerated in the State of Virginia. He initiated the above entitled action *pro se* and *in forma pauperis* on July 12, 2016. His complaint is now before the undersigned for initial review as mandated by 28 U.S.C. § 1915A. For the reasons set forth below, the undersigned recommends that the complaint be dismissed and that plaintiff be assessed a "strike" under the Prison Litigation Reform Act.

## I. BACKGROUND

This action arises plaintiff's inability to secure a North Dakota marriage license. Plaintiff is endeavoring to sue Carrie Clemens, Deputy Treasurer of Cass County, North Dakota, as well as North Dakota Supreme Court Justices VandeWalle, Sandstrom, Crothers, and McEvers, asserting that, amongst other things, they denied him the rights to marry in his "homeland," due process, equal protection, "religious expression," and to contract.

According to plaintiff, he filed an application for a marriage license in Cass County, North Dakota, some time before May 25, 2016. On June 15, 2016, he received correspondence from Carrie Clemens, Cass County Deputy Treasurer, that read as follows:

> This letter is to inform you we are unable to issue a North Dakota marriage license
> to you. The biggest reason we are unable to do this is because a North Dakota

> marriage license permits you to get married within the State of North Dakota. It is not valid to be used in another state. [F]rom your letter [you] state that you are incarcerated in the State of Virginia. If you wish to marry you would need to contact marriage license officials in the State of Virginia to see what their requirements are. Marriage license is based on where the actual marriage ceremony takes place, not where someone is a resident (or was a resident) of. I am sorry but there is nothing that we can do to help you and I am returning all of the papers that were sent to our office.

(Docket No. 3). Although not entirely clear, it appears that he unsuccessfully petitioned the state courts for relief as he alleges the following in his complaint:

> D. Prior to that: LordMaster filed: Mandamus, for reason there [FN3]: regarding that Application for Marriage (denied thereby).
>
> E. So the inference:
> - Since LordMaster filed that Mandamus <after> he filed Issuance of Application to Marry;
> - Yet no rationale to that affect: was that he received no response from that court of Issuance <after> he filed that Mandamus;
> - Thus, it's reasonable to infer that he had not filed that mandamus, he may in all likelihood, have not heard from that issuance-court;
> - Ergo, the denial came right on the heals of the denial of the petty court (ie. high court seems to: dodge that mandamus, by seeming conferring with the petty court on same, so it didn't have to address this federal question);
> - Wherefore, if this be true & that's what the facts seem to indicate–as applied–such is unconstitutional (ie. capricious and arbitratrary acts of a government)!
>
> <as may be bolstered by the following>
>
> F. LordMaster, put his NOA and Mandamus, in the same correspondence, he gave to Va. Doc. Personnel for Mailing, on 5-25-16 (Ex. A).
>
> G. [As put to supra-E]: it just seems factually fishy, that he seemingly only got a reply out of petty court <&> not way before (i.e. reasonable & experiential nexus: would indicate <vis. non-docketing of petty court & same in their response, seems to suggest, the factual predicate intra: Marital Mandamus #20160242 (N.D. Sup. Ct.) (e.g. a meritable action-spuriously denied]>)!

[FN3] <u>Supreme Court of N.D. § 20160242</u> (ie. Marital-Mandamus) <Note. Not pursuant to Cass Co. Court # 2015-cv-03334 (ie. Name-Change)>[vis I compared ("cf.") the Mandaum to the Name-Change, as they delt with the same stuborn justice <ie. past-conduct in similatude to present-conduct>]
    Note.    <u>Judgement</u> on that <u>Mandamus</u> (June 13, 2016) (Denial Ordered).
      Yet: <u>Inssuance</u> of that <u>Mandamus</u> was <u>prior</u> to:
      note 2- supra! (ie. Petty Court - Denial)

(Docket No. 3) (emphasis and errors in original). He then goes on to assert:

    H.  Seeing as long established--right to marry, as of personal choice, such denial is implicitly unconstitutional!

    J.  Taking in the fact that LordMaster is a--North Dakota citizen, he has the right to be married in his homeland, since that is where he and his fiancee intend to reside upon his release of Interstate Incarceration.

    K.  Even more persuasive is that--North Dakota, even has jurisdiction over LordMaster!

    L.  Thus it is unpersuasive that due to lack of presence, he has no right to marry, since N.D. Marriage license only seem to recognise: "actual marriage ceremony"!

    N.  That, if true, would preclude LordMaster from Marring, since his faith does not mandate 'marriage ceremony'!

    O.  Thus, even if LordMaster was--PRESENT, Defendant Clemens would in all likelihood, have that reason to perclude that Marriage, even though he'd be--PRESENT, as suggested!

    P.  So, not only did the petty and/or high courts thereby--denied--LordMaster's Marital Right, but also-deprived him of his faith-edicts (ie. implicitly demanding 'marital ceremony, where his faith does not require such, on top of citizenship & jurisdiction thereby.

    Q.  The high court, has previous/spuriously--not entertained, former rehearing or reconsider #2015-cv-03334 (Ex. B), that I previously sent them, hence why was it "cf."--Instant Mandamus, et. al.

    R.  Which is very confusing, as both petty &/or high courts have Jurisdiction over--LordMaster, and venue proper.

    S.  Also confusing is the faith/marital nexus--deprivations, (ie. their marriage of their

3

> > faith requires naught, 'actual marriage ceremony').
>
> T. Which compounds that, as applied that, deprives personal choice to marry as N.D. law seems to not apply to all of the N.D. Citizenry, as applied, that puts me outside the law or in effect - manifests--LordMaster as a non-entity Depriving him--Supreme law of the law, to effectuate--same!

(Id.) (errors in original) (footnotes omitted from original).

## II.     STANDARDS GOVERNING INITIAL REVIEW

When a prisoner proceeding *in forma pauperis* seeks to sue a governmental entity, officer, or employee, the Prison Litigation Reform Act of 1995 ("PLRA") requires the court to conduct an early screening of the complaint to weed out claims that clearly lack merit with the hope that this will help lessen the burdens imposed by the ever-rising numbers of prisoner suits, which too often are frivolous and without merit. Jones v. Bock, 549 U.S. 199, 202-03 (2007); Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). In conducting the screening required by 28 U.S.C. § 1915A, the court is required to identify any cognizable claims and to dismiss the complaint, or any part of it, that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant.

Neither 42 U.S.C. § 1983 nor the PLRA imposes any heightened pleading requirements, however. Jones v. Bock, 549 U.S. at 211-12. Consequently, in order to state a cognizable claim, the complaint need only meet the minimum requirements of Fed. R. Civ. P. 8(a)(2), which are that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). In addition, when a prisoner is proceeding *pro se*, the court is obligated to construe the complaint liberally and hold it to a less stringent standard than what normally would be required of attorneys. Id.; see also Federal Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008).

Nevertheless, even though the pleading requirements are minimal and complaints are to be

liberally construed in *pro se* cases, this does not mean that the court must accept everything or anything that is filed by *pro se* prisoners. In enacting the screening requirement, Congress obviously expected it to be more than a ritualistic exercise and that courts would only allow to go forward those claims that state a cognizable claim, that seek relief from a non-immune party, and that are not obviously frivolous or malicious.

To meet the minimal pleading requirements of Rule 8(a)(2) for stating a cognizable claim, something more is required than simply expressing a desire for relief and declaring an entitlement to it. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 n.3 (2007) ("Bell Atlantic"). The complaint must state enough to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. at 93 (quoting Bell Atlantic, 550 U.S. at 555). In addition, even though the complaint is to be liberally construed, it must also contain enough to satisfy Bell Atlantic's "plausibility standard." E.g., Ventura-Vera v. Dewitt, 417 F. App'x. 591, 592, 2011 WL 2184269, at *1 (8th Cir. 2011) (unpublished per curiam) (citing Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) for the appropriate post-Bell Atlantic standard); see also Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (*pro se* complaints must allege sufficient facts to state a claim). Complaints that offer nothing more than labels and conclusions or a formulaic recitation of the elements are not sufficient. See id. Frivolous claims are those that are clearly baseless, fanciful, fantastic, or delusional. See Denton v. Hernandez, 504 U.S. 25, 32-34 (1992).

To state a cognizable claim under § 1983, a plaintiff must normally allege a violation of a right secured by the Constitution or the laws of the United States and that the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Walker v. Reed, 104 F.3d 156, 157 (8th Cir. 1997). Even under liberal pleading standards, a *pro*

*se* litigant, at the very least, must invoke rights under the Constitution or federal law in order to plead a § 1983 claim. Walker v. Reed, 104 F.3d at 157-58.

Finally, even though the court is obligated to construe *pro se* complaints liberally, the court is not required to ignore facts that are pled by a prisoner when they undermine the prisoner's claim. The court may accept as true all facts pled in the complaint and conclude from them that there is no claim as a matter of law. E.g., Thompson v. Ill. Dep't of Prof'l Reg., 300 F.3d 750, 753-754 (7th Cir. 2002) (citing other cases).

### III. DISCUSSION

**A. Justices VandeWalle, Sandstrom, Crothers, and McEvers are immune from suit**

"Judges performing judicial functions enjoy absolute immunity from § 1983 liability." Robinson v. Freeze, 15 F.3d 107, 108 (8th Cir. 1994); see also Callahan v. Rendlen, 806 F.2d 795, 796 (8th Cir. 1986) ("[J]udicial immunity protects a judicial officer from civil suits seeking money damages, including those suits initiated under 42 U.S.C. § 1983."). As the Eighth Circuit has explained, "[t]his absolute immunity from suit allows judges to fulfill their duties without concern for their own fortunes, which helps to ensure that their duties will be performed impartially and completely." See Howell v. Hofbauer, 123 F. Supp. 2d 1178, 1180 (N.D. Iowa 2000) (quoting Duffy v. Wolle, 123 F.3d 1026, 1034 (8th Cir. 1997)).

Judicial immunity is an immunity from suit, not just the ultimate assessment of damages. See Mireles v. Waco, 502 U.S. 9, 10 (1981). It cannot be overcome by allegations of bath faith or malice. Id.; see also Pierson v. Ray, 386 U.S. 547, 554 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously or corruptly."); Harlow v. Fitzgerald, 457 U.S. 800, 815-19, (1982) (opining that allegations of malice are insufficient to overcome qualified immunity).

There are only two circumstances under which judicial immunity may be overcome, neither of which are apparent in the case at bar. First, a judge is not immune from liability for nonjudicial actions, that is, actions not taken in the judge's official capacity. See Mirales v. Waco, 502 U.S. 9, 9-12 (adding that an action is judicial in nature if "it is a function normally performed by a judge and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity."). Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. See id.; see also Stump v. Sparkman, 435 U.S. 349, 356-57 (1998) ("A judge will not be deprived of immunity because the action he took is in error, was done maliciously, or was in excess of his authority; rather he will be subject to liability only when he has acted in 'clear absence of all jurisdiction.'").

The alleged actions of Justices VandeWalle, Sandstrom, Crothers, and McEvers– the denial of a petition filed by plaintiff with the North Dakota Supreme Court–were clearly judicial in nature; they involved functions normally performed by a justice and addressed an issue pending before the court. See Malina v. Gonzalez, 994 F.2d 1121, 1124 (5th Cir. 1993) (considering four factors when assessing whether an action was "judicial in nature"). Consequently, Justices VandeWalle, Sandstrom, Crothers, and McEvers are immune from suit.

### B. Plaintiff's claims are frivolous on their face

Plaintiff's complaint is frivolous on its face as is it clear that defendants are not preventing plaintiff from getting married or otherwise denying plaintiff any of his constitutional rights.

First, it is clear from the information provided by plaintiff that Clemens believed that he was intending to get married in Virginia when denying his application for a North Dakota marriage license. Notably, plaintiff does not assert that he told Clemens anything different. Moreover, he

7

does not assert in his complaint that he and his fiancé are planning a North Dakota wedding. He simply states that he and his fiancé intend to take up residence in North Dakota once he is released from custody.

A North Dakota marriage license has shelf life of 60 days. See N.D.C.C. 14-03-10 ("A person may not solemnize any marriage until the parties to the marriage produce a license regularly issued not more than sixty days before the date of the marriage . . . ."). Plaintiff is incarcerated in Virginia. His anticipated release date is December 10, 2027.[1] Armed with these facts, one could reasonably conclude that plaintiff intended to get married in Virginia. And as Clemens pointed out in her correspondence to plaintiff, a North Dakota marriage license would do plaintiff little good in Virginia. If plaintiff intends on getting married in Virginia, then he should look to the Virginia's licensing authority and not North Dakota's.[2]

Second, if plaintiff was intending to get married in North Dakota when applying for license in May 2016, the undersigned simply notes that it would have expired well before he is scheduled to be released from custody in Virginia and able to travel back to North Dakota. If plaintiff does not intend to get married until he is released and can travel back to North Dakota, he can reapply closer in time to his release date. In any event, he has suffered no injury as a result of his inability to obtain marriage in May 2016.

As for plaintiff's objection to North Dakota's licensing requirement on religious grounds and

---

[1] Plaintiff's release date is publicly posted on the Virginia Department of Corrections' website.

[2] When it comes to determination of which licensing requirements apply, the key inquiry is not the state in which one resides or intends to reside but rather state in which the wedding is to take place. If plaintiff is laboring under misapprehension that a couple married out-of-state require a North Dakota license in order to live as a married couple in North Dakota, he can take solace in the fact that North Dakota will afford full faith and credit to any valid out-of-state marriage. See N.D.C.C. §14-03-08.

8

his assertions regarding deprivation of due process and equal protection, they are simply nonsensical.  **C.    Plaintiff should be assessed a "Strike" under the PLRA**

The Prison Litigation Reform Act (PLRA) contains what is commonly referred to as the "three strikes" provision, codified at 28 U.S.C. § 1915(g).  This provision effectively bars prisoners from bringing a civil action or appealing a judgment in a civil action *in forma pauperis* if, on three or more prior occasions, he filed an action or appeal that was dismissed on the grounds that it was frivolous, malicious, or failed to state a claim.  See 28 U.S.C. § 1915(g); see also Jackson v. Auburn Correctional Facility, Nos. 9:07-CV-0651 and 9:07-CV-0659, 2009 WL 1663986 , at *3 (N.D.N.Y. June 15, 2009) (Peebles, M.J) ("The manifest intent of Congress in enacting this 'three strikes' provision was to curb prison inmate abuses and to deter the filing of multiple, frivolous civil rights suits by prison inmates.").  It does make an exception, however, in instances when the prisoner is under imminent danger of serious physical injury.  See 28 U.S.C. § 1915(g).[3]  "The Court may sua sponte raise the three strikes provision of the PLRA on its own initiative."  McCreary v. Cox, No. 07-11478, 2007 WL 2050268, at *1 (E.D. Mich. 2007).

As discussed above, plaintiff's complaint is frivolous on its face and otherwise fails to state claims upon which relief may be granted.  As a consequence, plaintiff should be assessed a strike for PLRA purposes.

**IV.    CONCLUSION AND RECOMMENDATION**

The undersigned **RECOMMENDS** that the court **DISMISS** plaintiff's complaint for the

---

[3] A threat of serious physical injury must be real and exist at the time the complaint or appeal is filed in order to meet the "imminent danger" requirement of § 1915(g).  See Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003); Ciarpaglini v. Saini, 352 F.3d 328, 330 (7th Cir. 2003); see also Heimermann v. Litscher, 337 F.3d 781, 792 (7th Cir. 2003) ("The 'imminent danger' exception to 1915(g)'s 'three strikes' rule is available for 'genuine emergencies,' where 'time is pressing, and 'a threat is real and proximate.").

reasons set forth above. Additionally, the court recommends that plaintiff be assessed a strike under the PLRA.

## NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 21st day of July, 2016.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court